IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA DeCARMINE-BENDER | : | CIVIL ACTION |
| v. | : | |
| ACHIEVEMENT HOUSE CHARTER SCHOOL, et al. | : | NO. 06-CV-4610 |

J. William Ditter, Jr.                                                                 February 11, 2008

**MEMORANDUM AND ORDER**

Plaintiff Maria DeCarmine-Bender alleges she was wrongfully discharged as principal of Achievement House Charter School ("AHCS") based on conduct protected by the First Amendment. The defendants[1] assert that plaintiff was dismissed for insubordination and have moved for summary judgment. For the reasons that follow, the defendants' motion for summary judgment is granted.

1. Factual Background

The parties have submitted a statement of uncontested material facts but it does not appear that there is much on which they agree. It is agreed, however, that DeCarmine-Bender was offered the position of principal in June 2004 and was terminated on November 11, 2004. She was employed at will and did not have a written employment contract.

In her complaint, DeCarmine-Bender asserts she spoke out about the following issues she believed needed to be rectified:

---

[1] The individually named defendants are Wallace H. Wallace, Ph.D., the founder and chief executive officer of AHCS, and Helen Baskwill, the former chief financial officer of AHCS.

> 1. Baskwill's delay in paying for pre-designed curriculums causing them not to be available for teacher training or the start of school.
>
> 2. Baskwill's misrepresentation of AHCS's financial state to its board of directors.
>
> 3. The overpayment of many of the AHCS staff.
>
> 4. Wallace's and Baskwill's unnecessary contract with two web portal providers.
>
> 5. The overpayment and inadequate supervision of the student services staff that plaintiff believes was based on Baskwill's personal friendship with some of the student services staff members.
>
> 6. Baskwill's unilateral alteration of AHCS's computer printer order resulting in the purchase of lower quality printers and her denial that she had changed the order.

*See Compl.* at ¶¶ 17-18. DeCarmine-Bender also voiced her concerns about the ratio of mentors-to-students. AHCS's charter provided that the mentor-to-student ratio would be one mentor for twenty-five to thirty students. DeCarmine-Bender complained that AHCS's two mentors were assigned as many as sixty students.

Despite DeCarmine-Bender's efforts to retain two persons willing to defer compensation, Baskwill refused to hire more mentors. *Id.* at ¶¶ 20-23. Baskwill stated that AHCS could not afford to hire additional staff. DeCarmine-Bender asked to see the budget, but Baskwill refused. DeCarmine-Bender informed Baskwill that the by-laws provided that the principal was to be in charge of school finances. Thereafter, on September 21, 2004, the board of directors amended the by-laws to take all authority over finances away from the principal. *Id.* at ¶¶ 23-26.

In October 2004, DeCarmine-Bender contacted the Pennsylvania Department of Education ("PDE") to discuss her concerns with the mentoring ratio. After being advised that

AHCS could "be in serious trouble," DeCarmine-Bender again "pleaded with defendants to hire more mentors." *Id.* at ¶¶ 27-29.  DeCarmine-Bender asserts that as a result of her conversation with the PDE, the PDE scheduled an on-site visit of AHCS.  Thereafter, Wallace instructed DeCarmine-Bender that she was not authorized to communicate with the PDE.  *Id.* at 30-31.

According to DeCarmine-Bender, AHCS teachers, staff, and parents were also voicing concerns about the school.  On October 14, 2004, DeCarmine-Bender contacted Wallace and advised him that the school was: 1) not running properly; 2) in financial trouble; 3) understaffed; and 4) in violation of its charter.  DeCarmine-Bender also told Wallace that she would go to the board of directors with her complaints if he did not hire at least one additional mentor.  Wallace did not hire any new mentors and DeCarmine-Bender attended the October 19, 2004, board meeting.  DeCarmine-Bender asserts that her attempt to address her grievances with the board was cut off by Wallace.  *Id.* at ¶¶ 32-36.

DeCarmine-Bender alleges that her duties were "drastically reduced" after the board meeting.  DeCarmine-Bender was terminated on November 11, 2004, without being notified of the reason for her termination.  On February 1, 2005, DeCarmine-Bender was notified in writing that she was terminated for insubordination.  *Id.* at ¶¶ 38-40.

    2.  Discussion

The standard for summary judgment is well established.  I must consider the evidence in a light most favorable to the non-moving party and, if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion.

Defendants' motion for summary judgment asserts that DeCarmine-Bender was not terminated because of any public statements she made but because of her inability to perform her job duties properly and her insubordination. DeCarmine-Bender asserts that she was acting in the public interest and therefore protected by the First Amendment. The question here is whether DeCarmine-Bender's speech was that of a private citizen and protected by the First Amendment, or speech of a public employee made pursuant to the employee's official duties and thus not protected.

Public employees do not surrender all their First Amendment rights by reason of their employment. *See Connick v. Myers*, 461 U.S. 138, 144-45 (1983). The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 1958 (2006). However, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.* at 1959 (quoting *Connick,* 461 U.S. at 154). When public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Garcetti*, 126 S. Ct. at 1961; *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006).

DeCarmine-Bender begins her response to defendants' motion for summary judgment by asserting that her complaints were matters of public concern and were made in "the discharge of her responsibilities as Principal and as a person in a position requiring her protection of the rights of staff, students, parents and taxpayers." *Pl's Resp. S.J. Mot.* at 4. In light of such an assertion, DeCarmine-Bender cannot prevail as a matter of law. Public employees acting in their official

capacity are not protected by the First Amendment.  *Garcetti*, 126 S. Ct. at 1961; *Hill*, 455 F.3d at 241-42.

An appropriate order follows.

                                              BY THE COURT:

                                              /s/ J. William Ditter, Jr.
                                              J. WILLIAM DITTER, JR., S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA DeCARMINE-BENDER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ACHIEVEMENT HOUSE CHARTER SCHOOL, et al. | : | NO. 06-CV-4610 |

**O R D E R**

AND NOW, this   11th   day of February, 2008, IT IS HEREBY ORDERED that the defendants' motion for summary judgment (Dkt. # 22) is GRANTED and the complaint is dismissed with prejudice.

BY THE COURT:

/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., S.J.